OPINION
{¶ 1} Appellant, Mary Beth Hutson, was arrested for assault in violation of R.C. 2903.13, a misdemeanor of the first degree. Hutson pled not guilty, and a bench trial commenced. On March 14, 2007, after the conclusion of the testimony and a review of the exhibits, the trial court found Hutson guilty of misdemeanor assault.
 {¶ 2} As such, Hutson was sentenced to 180 days in jail and fined $1,000. The trial court suspended 175 days in jail and $900 of the fine on the following conditions: *Page 2 
(1) no violation of any law or ordinance, except minor traffic offenses, for two years; (2) payment of all fines and costs within 30 days; (3) completion of 36 hours of community service; (4) drug and alcohol evaluation; (5) attendance of a drug and alcohol awareness workshop; (6) restitution for any injuries caused to the victim; and (7) no contact by any means with the victim, nor entry onto her residence.
 {¶ 3} The facts which gave rise to this appeal stemmed from an incident that occurred at the Eleventh Frame bar in Kent, Ohio on October 6, 2006. On this night, an altercation ensued whereby Hutson struck Jaimie Wiley with her fist, thus propelling her into a cinder-block wall. As a result of this confrontation, Wiley sustained injuries.
 {¶ 4} The next day, Wiley's neighbor, who is also Hutson's ex-husband, invited Wiley over to his residence to listen to a message on his answering machine. The message stated: "I knocked this bitch right up out of your trailer park * * * please erase this message." State's exhibit C was the micro-cassette recording of that message left on the answering machine of Hutson's ex-husband.
 {¶ 5} Hutson filed a motion to stay the execution of her sentence; however, this court denied her motion to stay. Hutson filed a timely notice of appeal asserting the following assignment of error:
 {¶ 6} "The Trial Court Erred to the prejudice of the Defendant-Appellant in admitting a tape-recorded statement of a telephone message recording that was not properly authenticated."
 {¶ 7} The decision to admit or exclude evidence rests within the broad discretion of the trial court. State v. Long (1978), 53 Ohio St.2d 91,98. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that *Page 3 
the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.) State v. Adams (1980), 62 Ohio St. 2d 151, 157-58.
 {¶ 8} Evid. R. 901, governing the requirements of authentication or identification of evidence, provides, in pertinent part, that:
 {¶ 9} "(A) The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
 {¶ 10} "* * *
 {¶ 11} "(5) Voice Identification. Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."
 {¶ 12} We note that while there is not an absolute method to authenticate a recorded voice, the trial court, in exercising its discretion, should consider the witness' familiarity with the voice based on the surrounding circumstances. State v. Spires, 7th Dist. No. 04 NO 317, 2005-Ohio-4471, at ¶ 31.
 {¶ 13} Hutson alleges the trial court abused its discretion in admitting state's exhibit C since Wiley "does not possess the necessary familiarity with [her] voice that is expressed in other cases in this jurisdiction as a necessary predicate to admission." We disagree.
 {¶ 14} In order to support her argument, Hutson cites State v.Foti (Dec. 10, 1987), 8th Dist. No. 52547, 1987 Ohio App. LEXIS 9972. Hutson's reliance on Foti, however, is flawed. The Foti Court determined a proper foundation was laid for the *Page 4 
introduction of a taped telephone call since the recipient of a telephone call had firsthand conversations with the appellant on several occasions and she was able to distinguish the appellant's voice. Id. at *5. While the Foti Court warns that telephone conversations present a risk of unfair prejudice, it does so in the context of when "the person receiving the call does not know and therefore cannot recognize the caller's voice." Id. While this contention may be true, it is not applicable in the instant case since the trial court had before it a witness that was able to sufficiently identify the caller's voice.
 {¶ 15} Contrary to Hutson's belief, Evid. R. 901 does not require that a witness identifying a voice must have heard that voice on numerous occasions in order to identify it. The rule explicitly allows the witness, "based upon hearing the voice at any time under circumstancesconnecting it with the alleged speaker," to express her opinion. Evid. R. 901(B)(5). (Emphasis added.) At trial, Wiley testified that she recognized the voice on the machine to be that of Hutson. Wiley further testified that she had heard the voice of Hutson on the morning of the incident when Hutson yelled at her, "if you have a mother * * * problem with me next door, I'll come back and poke your eyeballs out of your head." In addition, Wiley indicated that she was able to identify the voice as that of Hutson "because when she threatened to poke my eyeballs out of my head, her voice stuck in my head."
 {¶ 16} A review of the transcript further reveals that Wiley, after listening to the message, personally recorded the message onto a cassette tape. Furthermore, Wiley positively identified the cassette tape presented at trial as the one she had delivered to *Page 5 
the Kent Police Department. Therefore, the trial court did not err in admitting state's exhibit C, since it was properly identified and authenticated pursuant to Evid. R. 901.
 {¶ 17} Hutson additionally claims the trial court erred in its application of Evid. R. 901(B)(5) by "asserting that voice recognition `goes to the weight of evidence and not admissibility.'" However, once the trial court determined sufficient evidence was presented to comply with the admissibility requirements of Evid. R. 901(B)(5), the sufficiency of such testimony to verify the identity of the defendant is a matter to be weighed by the trier of fact. State v. Howland (Apr. 15, 1982), 4th Dist. No. 439, 1982 Ohio App. LEXIS 14260, at *12.
 {¶ 18} Moreover, Hutson claims the admission of state's exhibit C constituted a prejudicial error that compromised her right to a fair trial. This court has determined the trial court did not err in admitting state's exhibit C. Alternatively, even if there was error, such error was harmless.
 {¶ 19} Under Evid. R. 103(A) and Crim. R. 52(A), error is harmless unless substantial rights of the defendant are affected. State v.Hicks (Aug. 16, 1991), 6th Dist. No. L-83-074, 1991 Ohio App. LEXIS 3856, at *13.
 {¶ 20} For nonconstitutional errors, the test is whether "there is substantial evidence to support the guilty verdict even after the tainted evidence is cast aside." State v. Cowans (1967),10 Ohio St.2d 96, 104.
 {¶ 21} "The Ohio test * * * for determining whether the admission of inflammatory and otherwise erroneous evidence is harmless non-constitutional error requires the reviewing court to look at the whole record, leaving out the disputed evidence, and then to decide whether there is other substantial evidence to support the guilty verdict. If *Page 6 
there is substantial evidence, the conviction should be affirmed, but if there is not other substantial evidence, then the error is not harmless and a reversal is mandated." State v. Davis (1975),44 Ohio App.2d 335, 347. (Citations omitted.)
 {¶ 22} After a review of the evidence in the record, excluding state's exhibit C, we determine the remaining evidence supports the guilty verdict. First, Officer Jacobs testified as to the events that occurred at the Eleventh Frame bar. Second, Ms. Wiley identified Hutson as the individual who had thrown her into the cinder-block wall at the Eleventh Frame bar. In addition, Ms. Wiley testified that Hutson verbally threatened her on the morning of the incident. As ample other evidence was before the trial court to demonstrate Hutson's guilt, the trial court's consideration of state's exhibit C did not affect the outcome of the case and, at most, constitutes harmless error. As such, this argument advanced by Hutson is without merit.
 {¶ 23} For the foregoing reasons, the trial court did not abuse its discretion by allowing state's exhibit C into evidence, and Hutson's argument to the contrary is without merit. The judgment of the trial court is affirmed.
 DIANE V. GRENDELL, P.J., MARY JANE TRAPP, J., concur. *Page 1