[Cite as *State v. Brown*, 2017-Ohio-9259.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-A-0021** |
| MARQUE DAQUAN BROWN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas.
Case No. 2014 CR 00361.

Judgment: Affirmed in part and reversed in part; remanded.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Thomas Rein*, 820 West Superior Avenue, 820 Building, Suite 940, Cleveland, OH 44114 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Marque Daquan Brown, appeals from the entry of sentence issued by the Ashtabula County Court of Common Pleas on February 26, 2016, sentencing appellant to 22 years in prison on two counts of involuntary manslaughter. The trial court's judgment is affirmed in part and reversed in part for the reasons stated below.

## Statement of Facts and Procedural History

{¶2} This case stems from an altercation that occurred between appellant and his girlfriend, Taisha Ramirez, on or about May 25, 2014. On that date, appellant and Taisha were 20 and 17 years old, respectively. Taisha was approximately seven or eight months pregnant with appellant's son. They resided together at the home of Taisha's mother, Marilyn Cedeno; Taisha's brothers, Jose Luis Ramirez, Andre Luiz Ramirez, Ismal Ruiz, and Kenny Gonzalez; and Taisha's 13-year old sister, J.R.

{¶3} The following is a summary of the testimony presented at trial.

{¶4} Taisha and J.R. went to bed in the same room around 10:00 p.m.; appellant was not home at the time. Around 3:00 a.m., the sisters were awoken by appellant knocking on the door; Taisha let him in the house. Appellant and Taisha went upstairs to the room they shared on the third floor; J.R. followed and remained on the stairs where she could see them. The couple then went to the mother's bedroom on the second floor; J.R. followed and stood in the doorway while the couple argued for about 20 minutes. The couple moved to the bathroom and closed the door for about 10 minutes.

{¶5} J.R. opened the bathroom door when she heard Taisha screaming and crying. J.R. heard Taisha tell appellant not to punch her and observed Taisha on the ground, bleeding from her nose. J.R. saw appellant punch Taisha in the face with a closed fist three or four times. J.R. unsuccessfully attempted to get appellant away from Taisha. J.R. observed blood on the floor of the bathroom, and Taisha's nose appeared to be broken and her lips were cut.

{¶6} Ismal and Kenny heard their mother and J.R. screaming, and they entered the bathroom. Kenny and Ismal observed Taisha sitting on the floor, bleeding from her

2

nose, and crying; her nose and mouth were swollen. Kenny observed blood on the floor, in the sink, and on the toilet. Ismal observed blood on the carpet, walls, floor, and toilet, in addition to the towels Taisha was holding to her nose to stop the bleeding. Ismal testified Taisha's nose and lips were swollen. Photographs of the blood in the bathroom and on the towels, and of the injuries to Taisha's face, were submitted as exhibits to the jury.

{¶7} Kenny took appellant to the shower and punched him in the face; Ismal also hit appellant with his fist. The brothers took appellant downstairs; appellant was yelling that he was sorry and asking Taisha to forgive him. Ismal called the police. A recording of the call was played for the jury. J.R. testified she had to help Taisha downstairs because she was unable to walk on her own. By the time they made it downstairs, the police had arrived.

{¶8} Officer Daniel Gillespie, of the Ashtabula City Police Department, reported to the scene with another patrolman, at which time he heard yelling and screaming from inside the residence. Upon entering the residence, he observed multiple occupants focusing their anger at appellant, who was backing up towards the door with his hands up. Officer Gillespie placed appellant in his patrol car and went back inside to investigate. He then observed Taisha crying and bleeding heavily from her nose, which was disfigured and swollen; the towel she was holding to her face was soaked with blood. He testified that Taisha was initially reluctant to remove the towel from her face and talk to him, but that she eventually told him appellant had hit her while they were arguing.

{¶9} Officer Gillespie testified that, on the way to the station, appellant indicated he wanted to tell the officer what happened; therefore, Officer Gillespie advised appellant

3

of his *Miranda* rights. Officer Gillespie testified that appellant reported arguing with Taisha, which involved a lot of yelling and screaming, and then he left. Appellant would not answer Officer Gillespie's question of how Taisha became injured. Appellant was booked on a charge of domestic violence.

{¶10} J.R. stayed at Taisha's side until an ambulance arrived. Kenny rode in the ambulance with Taisha. J.R. and Kenny remained with Taisha at the hospital. Kenny and J.R. testified they were only there for about half an hour, no tests were performed, and the only treatment Taisha received was Tylenol. Kenny indicated Taisha did not appear to be "healthy or feeling fine" when she was discharged.

{¶11} Dr. Imrann Haniff was the emergency room physician on duty when Taisha arrived at Ashtabula County Medical Center ("ACMC") around 6:30 a.m. Dr. Haniff testified that Taisha reported she had been assaulted and hit in the face. He stated Taisha told him she was slapped in the face one time; he did not observe anything that contradicted Taisha's report of what happened. Dr. Haniff observed that Taisha's lip was swollen, she had blood coming from both nostrils, and she was pregnant. The nurse was able to detect a fetal heart tone at that time, which indicated the fetus was alive. Dr. Haniff did not find any fractures during his examination of Taisha, and he gave her an ice pack. He testified Taisha was in good condition when she was discharged around 7:30 a.m.

{¶12} When Taisha returned home from the hospital, Ismal observed that she was dizzy and weak and could not make it up the stairs to her third-floor bedroom. He helped her out of the car and up to the second floor with the assistance of another family member. J.R. stayed with Taisha in their mother's bedroom. She testified that Taisha started to bleed again from her nose, but she did not notice any injuries on Taisha's head. At

4

approximately 9:15 a.m., Ismal called for another ambulance because Taisha was bleeding and foaming from her nose, she could not talk or move, her nails were turning blue, and she was unresponsive. A recording of the call was played for the jury.

{¶13} Dr. Haniff again treated Taisha in the emergency room, who arrived this second time in cardiac arrest. The staff performed CPR, and Taisha was intubated; it was difficult to obtain a fetal heart tone. They were unable to revive Taisha.

{¶14} Taisha and her unborn son both died that morning in the emergency room.

{¶15} Dr. Joseph Felo, Deputy Medical Examiner and Forensic Pathologist for Cuyahoga County, performed an autopsy on Taisha. He noted her pregnancy was in its third trimester and observed cuts, scrapes, and bruises caused by blunt trauma to her upper and lower lips. There were no fractures to her skull or her nose. He observed diffuse cerebral edema, i.e., swelling of the brain, and a subdural hematoma, i.e., bleeding on the surface of the brain, caused by blunt trauma to her head. He testified that one slap would not have caused the injury because there were three separate impact sights.

{¶16} Dr. Felo did not perform a separate autopsy on the child because he was not born alive. He did not find any birth defects during his external examination, however, and opined that the unborn child would have lived had Taisha not died.

{¶17} Dr. Pamela Lancaster, the Ashtabula County Coroner, investigated Taisha's death at ACMC, reviewed the autopsy report, and issued a death certificate. She testified that the cause of Taisha's death, within a reasonable degree of medical certainty, was the subdural hematoma due to blunt impacts to the head. She ruled the manner of Taisha's death as a homicide. Because the child was not born alive, there was not a separate coroner's verdict or death certificate issued.

5

{¶18} Detective William Felt, of the Ashtabula City Police Department, interviewed appellant on May 27, 2014, with Lieutenant Doug Hollis. Detective Felt testified as to his training in detecting deception, analyzing and determining whether a person is being truthful through physical and nonphysical cues, and assessing the demeanor and behavior of an interviewee. He testified that appellant did not appear bothered by his arrest and that he seemed to lack emotion. The interview was played for the jury, during which appellant appeared to be crying. Detective Felt testified that there was a lack of congruence in appellant's behavior because he did not produce tears; in other words, appellant's physical reaction did not match his verbal reaction. During the interview, appellant admitted to arguing with Taisha until he was pulled away by Ismal and Kenny. Near the end of the interview, appellant admitted he punched Taisha.

{¶19} On June 26, 2014, appellant was indicted on two counts of murder, unclassified felonies, in violation of R.C. 2903.02(B); two counts of involuntary manslaughter, first-degree felonies, in violation of R.C. 2903.04(A); and two counts of felonious assault, second-degree felonies, in violation of R.C. 2903.11(A)(1). Appellant pled not guilty.

{¶20} Appellee, the state of Ohio, filed a motion in limine to preclude evidence or testimony of alleged medical negligence as an independent intervening cause, to which appellant filed a response in opposition. A hearing was held on the motion. The trial court granted the state's motion, finding the reports of appellant's expert did not establish that Taisha's medical care was an independent intervening cause of death as defined by law.

6

{¶21} A jury trial commenced February 2, 2016. One count of felonious assault, as against the unborn child, was dismissed at the state's request following trial. The defense renewed its request that the jury be instructed as to intervening cause, which the trial court denied. The jury found appellant guilty of two counts of involuntary manslaughter and one count of felonious assault; it found him not guilty of both counts of murder.

{¶22} The trial court merged the felonious assault count into both involuntary manslaughter counts for purposes of sentencing. On February 26, 2016, the trial court sentenced appellant to 11 years in prison on each count of involuntary manslaughter, to be served consecutively, for a total term of 22 years in prison.

{¶23} Appellant now raises eight assignments of error for our review:

[1.] The State failed to present sufficient evidence to sustain a conviction against Appellant.

[2.] Appellant's convictions are against the manifest weight of the evidence.

[3.] Appellant was denied a fair trial by the witness' improper comments while testifying.

[4.] The trial court erred by granting the state's motion in limine and by preventing Appellant to present a complete defense which would have included the alleged medical negligence.

[5.] The trial court erred and violated Appellant's right to a fair trial by permitting the State of Ohio to introduce victim impact evidence.

[6.] Appellant was deprived of his fundamental right to testify in his own defense.

[7.] The trial court erred by ordering appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14 and HB 86.

[8.] The trial court erred by ordering convictions and a consecutive sentence for separate counts because the trial court failed to make a proper determination as to whether those offenses are allied offenses pursuant to R.C. 2941.25 and they are part of the same transaction under R.C. 2929.14.

**Motion in Limine**

{¶24} We begin our analysis with appellant's fourth assignment of error. Appellant initially argues the trial court erred when it precluded his expert, Dr. John R. Becker, Jr., M.D., from testifying at trial regarding alleged medical negligence as an independent intervening cause of death.

{¶25} The state filed a motion in limine seeking to preclude evidence or testimony of alleged medical negligence as an independent intervening cause on the grounds that one who inflicts injury upon another is criminally responsible for that person's death, regardless of whether different or more skillful medical treatment may have saved her life.

{¶26} Appellant filed a response in opposition and a motion to present the testimony of Dr. Becker in relation to his expert opinion that "timely intervention on the part of [ACMC] would have saved the life of Taisha Ramirez and her fetus." Two reports from Dr. Becker were attached and incorporated into the motion. Appellant asserted that Dr. Becker's testimony supported the defense of independent intervening cause because the lack of proper diagnosis and treatment broke the chain of causation and relieved him of liability for the deaths.

{¶27} "'It is a general rule that the expert witness is not required to be the best witness on the subject. * * * The test is whether a particular witness offered as an expert will aid the trier of fact in the search for the truth.'" *State v. Tomlin*, 63 Ohio St.3d 724, 728 (1992), quoting *Alexander v. Mt. Carmel Med. Ctr.*, 56 Ohio St.2d 155, 159 (1978).

8

"A trial court's ruling as to the admission or exclusion of expert testimony is within its broad discretion and will not be disturbed absent an abuse of discretion." *State v. Koss*, 10th Dist. Franklin No. 13AP-970, 2014-Ohio-5042, ¶16, citing *Tomlin*, *supra*, at 728.

{¶28} A hearing was held on the motions, at which the trial court declared the expert reports did not establish that Taisha's medical care was an independent intervening cause of death because the expert did not conclude that medical personnel were grossly negligent. The trial court denied appellant's motion to present the expert opinion set forth in Dr. Becker's report.

{¶29} Although we do not agree with the basis of the trial court's decision, i.e., that Dr. Becker was required to set forth the ultimate legal conclusion that gross negligence had occurred, the expert report was not sufficient to support the defense theory that there was an independent intervening cause of death in this case.

{¶30} "It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." *State v. Johnson*, 56 Ohio St.2d 35, 39 (1978) (citations omitted). Accordingly, "[i]t is the general rule that one who inflicts injury upon another is criminally responsible for that person's death, regardless of whether different or more skillful medical treatment may have saved his life." *Id.* at 40 (citations omitted). "This rule has been qualified where there has been a gross or willful maltreatment of the patient by the medical personnel, * * * which is shown to have been an independent intervening cause of the patient's death." *Id.* (citations omitted). "While simple negligence is insufficient to break a causal connection, 'gross negligence or willful maltreatment will relieve the defendant from liability.'" *State v. Dukes*, 11th Dist. Portage

9

No. 2010-P-0027, 2011-Ohio-6849, ¶33, quoting *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, ¶45.

**{¶31}** In Ohio, "gross negligence is defined in terms of wanton or reckless conduct." *Mohat v. Horvath*, 11th Dist. Lake No. 2013-L-009, 2013-Ohio-4290, ¶23 (citations omitted). "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, paragraph four of the syllabus, adopting 2 Restatement of the Law 2d, Torts, Section 500 (1965). "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id.* at paragraph three of the syllabus, following *Hawkins v. Ivy*, 50 Ohio St.2d 114 (1977).

**{¶32}** Dr. Becker did not proffer any testimony in his expert reports that supports a theory of grossly negligent medical treatment. He opined, in relevant part, as follows:

> It is my professional opinion that timely intervention on the part of [ACMC] would have saved the life of Taisha Ramirez and her fetus. * * * It is my professional opinion that a Head CT should have been performed and that patient should have been observed for a much longer period of time in the Emergency Department. Subsequently we learn that patient developed a right subdural hematoma which if treated, would most likely have given patient Ramirez and her fetus, a greater than 50% percent chance of surviving. Therefore, staff at [ACMC] failure to diagnose or appreciate the severity of Taisha Ramirez's injuries and premature discharge from the Emergency Department did contribute to her death. * * *
>
> In conclusion, it is my professional opinion, that [appellant's] assault on Taisha Ramirez at approximately 3:30-3:45am ultimately lead [sic] to her and her fetus' death at approximately 10:34am.

10

However, staff at [ACMC] had an opportunity to diagnosis [sic] and potentially arrange treatment that could have led to saving the life of Taisha Ramirez and her fetus.

* * *

If a competent evaluation had taken place patient would have been admitted to an intensive care unit where her and her fetus would have had a reasonable chance of survival.

{¶33} Under the circumstances as presented in Dr. Becker's reports, any failure of medical personnel would not have amounted to gross negligence sufficient to break the causal connection between the injuries inflicted by appellant and the deaths of Taisha and her unborn child. This expert testimony amounted to an opinion that simple negligence had occurred. The fact that better medical care may have saved the life of Taisha and her unborn child is not dispositive. It does not constitute evidence that would have allowed the jury to make a factual determination that the causal connection had been broken between appellant's actions and the deaths. As a result, the proposed testimony as set forth in the expert reports would not have aided the jury in its search for the truth as to the cause of death.

{¶34} We are unable to conclude that the trial court abused its discretion by excluding the expert reports and testimony of Dr. Becker.

{¶35} Appellant next argues the trial court erred by granting the state's motion in limine to exclude any evidence of alleged medical negligence as an independent intervening cause.

{¶36} "'An order granting or denying a motion in limine is a tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated. An appellate court need not review the propriety of such an order unless the claimed error is preserved by a

11

timely objection when the issue is actually reached during the trial.'" *State v. Grubb*, 28 Ohio St.3d 199, 203 (1986), quoting *State v. Leslie*, 14 Ohio App.3d 343, 344 (2d Dist.1984).

{¶37} A decision on a motion in limine is reviewed for an abuse of discretion. *See, e.g.*, *State v. Spahr*, 47 Ohio App.2d 221, 224 (2d Dist.1976) ("Such a request lies in the inherent power and discretion of the trial judge to control the proceedings.").

{¶38} In its judgment entry, the trial court precluded any evidence, testimony, or argument at trial of alleged medical negligence as an independent intervening cause. The state later renewed its motion in limine due to a concern raised by a civil suit notice filed against Dr. Haniff. The trial court reiterated that Dr. Becker's expert reports were precluded because his conclusion as to cause of death, i.e. appellant's assault, was consistent with that of the state's medical experts. The trial court further stated, however, that although evidence of simple negligence would not be permitted under its ruling on the motion in limine, any evidence of gross negligence or willful maltreatment should be admissible.

{¶39} We do not find error with the trial court's decision to grant the state's motion in limine. Appellant raises no argument with regard to a proffer of evidence, if any, made during trial. This argument is not well taken.

{¶40} Appellant further argues the trial court erred when it denied his request for a jury instruction on independent intervening causes of death. The relevant instruction, as contained in 2 Ohio Jury Instructions, Criminal, Section 417.25, is as follows: "If the defendant inflicted an injury not likely to produce death, and if the sole and only cause of

death was (natural cause) (fatal injury inflicted by another person), the defendant who inflicted the original injury is not responsible for the death."

{¶41} Neither the evidence presented nor the evidence proposed was sufficient to warrant this instruction. There is no support for the proposition that any failure on the part of medical personnel was the "sole and only cause of death." The trial court did not err by failing to give the requested instruction.

{¶42} Appellant's fourth assignment of error is not well taken.

**Evidence at Trial**

{¶43} In his fifth assignment of error, appellant argues the trial court erred by failing to exclude certain victim-impact evidence regarding Taisha's schooling, pregnancy, and personality, which he alleges was highly prejudicial and inflamed the passions of the jury. In support of this argument, he cites the general rule from *State v. White*, 15 Ohio St.2d 146, 151 (1968):

> 'Except perhaps where the evidence of the homicide is entirely circumstantial, it is not permissible for the state in the first instance, and before the character of deceased has been assailed, to offer primary evidence or evidence in chief of deceased's good character or reputation as a quiet, peaceable, and law-abiding man.' 40 C.J.S. Homicide s 222, p. 1138.
>
> * * *
>
> Such evidence is excluded because it is irrelevant and immaterial to the guilt or innocence of the accused and the penalty to be imposed. The principal reason for the prejudicial effect is that it serves to inflame the passion of the jury with evidence collateral to the principal issue at bar.

{¶44} Defense counsel at trial did not object to some of the testimony of which appellate counsel now complains, and that portion of his claim is forfeited for appellate review. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶21, citing *State v.*

13

*Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶15 (an appellate court will not consider a claim of error that could have been called to the trial court's attention, but was not, at a time when it could have been avoided or corrected by the trial court).

**{¶45}** "Crim.R. 52(B) affords appellate courts discretion to correct '[p]lain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *Id.* at ¶22. The accused bears the burden to show error (i.e., a deviation from a legal rule that constitutes an obvious defect in the trial proceedings) and to demonstrate a reasonable probability that the error resulted in prejudice (i.e., affected the outcome of the trial). *Id.*, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Even when the accused meets this burden, appellate courts are not required to correct the error: we are to "'notice plain error "with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice."'" *Id.* at ¶23 (emphasis sic), quoting *Barnes*, *supra*, at 27, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶46}** The admission of the particular testimony to which defense counsel did object, by raising the issue of relevancy, is reviewed for an abuse of discretion. In this instance, a "'trial court has broad discretion in the admission and exclusion of evidence[.]'" *State v. Bickerstaff*, 11th Dist. Ashtabula No. 2014-A-0054, 2015-Ohio-4014, ¶31, quoting *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967). "When it is faced with weighing the probative value of evidence against the prejudicial impact, the trial court's decision on whether to admit or exclude such evidence will be upheld absent an abuse of discretion." *Id.*, citing *Shull v. Itani*, 11th Dist. Lake No. 2002-L-163, 2004-Ohio-1155, ¶39.

14

**{¶47}** We do not find that the testimony regarding Taisha's schooling, pregnancy, and personality violates the standard set forth in *White*. Additionally, the trial court instructed the prosecutor that the testimony could only relate to the witness's observations, not speculation. The trial court did not commit plain error, nor did it abuse its discretion, in allowing this testimony to be admitted.

**{¶48}** Appellant's fifth assignment of error is without merit.

**{¶49}** In his third assignment of error, appellant argues he was denied a fair trial by Detective William Felt's improper opinion testimony regarding appellant's truthfulness during his interview.

**{¶50}** "Opinion testimony from a police officer relating to an accused's veracity is not admissible. A jury tends to trust a police officer's perceptions, similar to that of an expert witness. As a result, such testimony infringes upon the fact-finding function of the jury and affects the fundamental fairness of the trial." *State v. Brown*, 11th Dist. Lake No. 2014-L-037, 2016-Ohio-1358, ¶33 (internal citations omitted). "If overwhelming evidence exists to support the defendant's conviction, however, then the error shall be deemed harmless." *State v. Withrow*, 11th Dist. Ashtabula No. 2011-A-0067, 2012-Ohio-4887, ¶48, citing Crim R. 52(A).

**{¶51}** We do not agree with appellant that Detective Felt's testimony amounted to an opinion as to appellant's veracity in this case. Rather, he was testifying as to his observations of appellant's behavior during the interview and appellant's reaction to receiving the news that Taisha and their son had died.

**{¶52}** We further hold that, assuming any error did exist in allowing Detective Felt's testimony at trial, it was harmless. "Under Evid.R. 103(A) and Crim.R. 52(A), error

15

is harmless unless substantial rights of the defendant are affected." *State v. Hutson*, 11th Dist. Portage No. 2007-P-0026, 2008-Ohio-2315, ¶19 (citation omitted). "The test is whether 'there is substantial evidence to support the guilty verdict even after the tainted evidence is cast aside.'" *Id.* at ¶20, quoting *State v. Cowans*, 10 Ohio St.2d 96, 104 (1967).

{¶53} Even without Detective Felt's testimony, there is substantial evidence to support the guilty verdicts, including appellant's admission near the end of the recorded interview that he had punched Taisha. The trial court also instructed the jury, during the detective's testimony, that "[w]itnesses testify, but the ultimate issues of fact are for the Jury to decide."

{¶54} Appellant's third assignment of error is without merit.

{¶55} As his sixth assignment of error, appellant argues the trial court deprived him of his fundamental right to testify in his own defense because it failed to inquire whether appellant had been informed of this right.

{¶56} "Generally, the defendant's right to testify is regarded both as a fundamental and a personal right that is waivable only by an accused." *State v. Bey*, 85 Ohio St.3d 487, 497 (1999) (citations omitted). Nothing in the record suggests appellant was not aware of his right to testify in his own defense or that defense counsel failed to advise him of this right. Further, the trial court was "not required to conduct an inquiry with the defendant concerning the decision whether to testify in his defense." *Id.* (emphasis deleted). Such an inquiry has been deemed unnecessary, capable of causing confusion and delay, and may also be harmful by interfering with the attorney-client relationship. *Id.* (citations omitted).

16

**{¶57}** Appellant's sixth assignment of error is without merit.

## Convictions

**{¶58}** As his first assignment of error, appellant argues the state failed to present sufficient evidence to warrant a jury instruction on appellant's involuntary manslaughter conviction as it pertains to the unborn child.

**{¶59}** When reviewing whether sufficient evidence was presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). Thus, a claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a weighing of the evidence. *State v. Habo*, 11th Dist. Portage No. 2012-P-0056, 2013-Ohio-2142, ¶14 (citation omitted).

**{¶60}** The state was required to prove that appellant violated R.C. 2903.04(A), which states: "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."

**{¶61}** Appellant asserts the jury was only instructed as to "another," not as to "the unlawful termination of another's pregnancy." He submits, therefore, that because the child was not born alive and there was not a separate autopsy report or coroner's verdict, the unborn child is not "another" and his conviction cannot stand as a matter of law.

**{¶62}** The jury was instructed, in relevant part, as follows:

> Count Four: Involuntary Manslaughter. Under Count Four of the Indictment, the defendant is charged with Involuntary Manslaughter,

17

in violation of Ohio Revised Code Section 2903.04(A), a felony of the first degree.

Before you can find the defendant guilty of Involuntary Manslaughter, you must find beyond a reasonable doubt that on or about May 25th, 2014, in Ashtabula County, Ohio, the defendant *knowingly caused the death of the unborn child* of Taisha Marie Ramirez-Cedeno, as a proximate result of committing or attempting to commit Felonious Assault.

'Another's unborn' means a member of the human species, who is or was carried in the womb of another, during a period that begins with fertilization and continues unless and until live birth occurs. *Person includes an unborn human who is viable*. Viable means the stage of development of a human fetus in which there is a realistic possibility of maintaining and nourishing of a life outside the womb with or without temporary, artificial life-sustaining support.

{¶63} Appellant's argument is without merit. The jury instructions correctly charge appellant with the death of the unborn child, not simply of "another," as appellant submits. The instruction was also supported by sufficient evidence: Taisha's autopsy revealed the cause of her death was the subdural hematoma she suffered at appellant's hands and that the unborn child would have been born alive had Taisha lived.

{¶64} Appellant's first assignment of error is without merit.

{¶65} As his second assignment of error, appellant argues both of his involuntary manslaughter convictions are against the manifest weight of the evidence.

{¶66} To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A

18

judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin*, *supra*, at 175.

{¶67} Nothing in the record of appellant's trial indicates the jury lost its way in weighing the testimony and other evidence, which has been extensively outlined above and need not be repeated here. The jurors had the opportunity to observe the eye witnesses and to judge their credibility. The jurors also watched the recorded video of appellant's interview with Detective Felt and thus were able to perceive appellant's credibility and veracity. We find the jury's conclusion that appellant is guilty, beyond a reasonable doubt, of the involuntary manslaughter of Taisha and the couple's unborn child is not against the manifest weight of the evidence.

{¶68} Appellant's second assignment of error is without merit.

## Sentencing

{¶69} As his eighth assignment of error, appellant argues the trial court erred by failing to merge both involuntary manslaughter convictions as allied offenses for purposes of sentencing because they were committed with the same animus. The trial court refused to merge appellant's convictions for involuntary manslaughter because appellant took "two lives," that of Taisha and her unborn child.

{¶70} When a defendant is charged with multiple counts in the same indictment, R.C. 2941.25 provides as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

19

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶71} "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, at syllabus. Two or more offenses may result in multiple convictions if any of the following are true: "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶25.

{¶72} "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus. Under R.C. 2941.25(B), offenses of dissimilar import *cannot* merge, as a matter of law. *Id.* at ¶25.

{¶73} Here, the involuntary manslaughter offenses are of dissimilar import because the harm was caused to separate victims: Taisha and her unborn son. *See* R.C. 2901.01(B)(1)(a)(ii) (the definition of "person" includes "[a]n unborn human who is viable"); *see also State v. Scott*, 5th Dist. Stark No. 2013CA00063, 2013-Ohio-5875, ¶28 (holding the termination of a pregnancy, as a result of maternal death caused by the defendant, involved harm to two separate victims). In this situation, it is also appropriate to conclude that each offense caused separate, identifiable harm to Taisha: her death

20

and the unlawful termination of her pregnancy. The trial court was therefore not permitted, as a matter of law, to merge these convictions, and it did not commit error in failing to do so.

{¶74} Because the offenses are of dissimilar import, we need not consider whether the offenses were committed with separate animus.

{¶75} Appellant's eighth assignment of error is without merit.

{¶76} As his seventh assignment of error, appellant argues the trial court erred when it ordered consecutive sentences because it failed to make the statutorily mandated findings, under R.C. 2929.14(C)(4), at the sentencing hearing and in the sentencing entry.

{¶77} "The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing court." R.C. 2953.08(G)(2). "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing * * * if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14, or * * * [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)-(b).

{¶78} R.C. 2929.41, which governs multiple sentences, provides, in pertinent part: "Except as provided in * * * division (C) of section 2929.14, * * * a prison term, jail term, or sentence of imprisonment *shall be served concurrently* with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state[.]" R.C. 2929.41(A) (emphasis added).

21

{¶79} Pursuant to R.C. 2929.14(C)(4), a trial court may order separate prison terms for multiple offenses to be served consecutively only if the court finds it "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" The trial court must also find that one of the following statutory factors applies:

> (a) The offender committed one or more of the multiples offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶80} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry[.]" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶37. Otherwise, the sentence is contrary to law. *Id.* The trial court has no obligation, however, to engage in a "word-for-word recitation" of the language in the statute or to set forth its reasons to support its findings, as long as they are discernible in the record. *Id.* at ¶28-29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶29.

22

{¶81} We note there are two somewhat redundant findings required under R.C. 2929.14(C)(4). The trial court must first make the threshold finding that consecutive sentences are "necessary to protect the public from future crime * * *." The court must then proceed to make an *additional* finding under (a), (b) or (c). The additional finding under subsection (c) requires the court to find that it is because of the offender's history of criminal conduct that consecutive sentences are "necessary to protect the public from future crime by the offender."

{¶82} At the sentencing hearing, the trial court stated: "The Court does find that consecutive sentences would be necessary to protect the public from future crimes and to punish the offender, and that considering two innocent lives were stolen from this family, that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the defendant poses to the public." It did not, however, make a finding with regard to the factors listed in R.C. 2929.14(C)(4)(a), (b), and (c). The trial court's judgment entry of sentence is similarly deficient.

{¶83} The concurring in judgment only opinion suggests the trial court made a "finding" that it was appellant's prior criminal history that justified the imposition of consecutive sentences. We emphasize, however, that the trial court had not ordered a presentence investigation report. The prosecutor outlined the following allegations, which it referred to as a history of "anger": appellant was suspended from high school in 2008 for fighting; appellant had a disturbance with his mother in 2012, during which he damaged a door in their apartment; appellant assaulted one of Taisha's brothers in 2012, for which no charges were brought, after her brother confronted appellant about his relationship with Taisha; and appellant was arrested for aggravated robbery in 2014, a

charge that was dismissed after the complaining witness did not appear before the court for the preliminary hearing.

{¶84} Although the prosecutor recited these prior instances of potentially criminal conduct, the trial court did not make a finding that this recitation satisfied the requirement under subsection (c). And while the trial court stated it had "looked at the defendant's record," that record is not before this court. Therefore, without the finding and without the benefit of a presentence investigation report to aid our review, we cannot conclude that the imposition of consecutive sentences was based on a history of criminal conduct.

{¶85} Another potentially pertinent factor that could have been considered in this case is R.C. 2929.14(C)(4)(b), specifically, whether "the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." The trial court stated it had not ordered a presentence investigation "because it was clear, based upon the brutal beating [Taisha] took, that community control would not be acceptable." This is not sufficient for us to conclude the trial court engaged in the correct analysis to overcome the presumption of concurrent sentences.

{¶86} Accordingly, we hold that the trial court failed to make the requisite findings at the sentencing hearing allowing for imposition of consecutive sentences. This matter must be remanded for resentencing. The trial court must either impose concurrent sentences or make the appropriate findings to justify the imposition of consecutive sentences on the record and incorporate them into the judgment entry of sentence.

{¶87} Appellant's seventh assignment of error has merit.

24

## Conclusion

**{¶88}** The judgment of the Ashtabula County Court of Common Pleas is hereby affirmed in part and reversed in part. This matter is remanded for further proceedings consistent with this opinion.

COLLEEN MARY O'TOOLE, J., concurs in judgment only,

CYNTHIA WESTCOTT RICE, P.J., concurs in judgment only with a Concurring Opinion.

_____

CYNTHIA WESTCOTT RICE, P.J., concurs in judgment only with a Concurring Opinion.

**{¶89}** While I agree with the majority's disposition of assignments of error 1 through 6 and 8, I disagree with its disposition of assignment of error 7 regarding the trial court's imposition of consecutive sentences. The majority remands for re-sentencing; however, a remand is only necessary for the court to prepare a nunc pro tunc entry to incorporate the court's findings regarding consecutive sentences. For this reason, I concur in judgment only.

**{¶90}** The majority states the trial court failed to make findings under the alternative factors listed in R.C. 2929.14(C)(4)(a), (b), and (c). However, the court made findings under R.C. 2929.14(C)(4)(c) (that "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender"). Contrary to the majority, the trial court made findings regarding appellant's criminal history. The prosecutor outlined that history. In 2008, while appellant was in a fight at school and the assistant principal tried to break it up, appellant punched

25

him. In 2012, appellant caused a disturbance with his mother during which he kicked in and damaged the door of her home. Later that year, he assaulted the brother of the victim in this case. In 2014, just months before the instant crimes, appellant was arrested for aggravated robbery, the victim of which reported that appellant pistol-whipped him when he would not give appellant his tax-return money. After hearing appellant's criminal history, the court said it had "looked at the defendant's record;" noted that recidivism is likely; and found that consecutive sentences were "necessary to protect the public from future crimes."

{¶91} It is worth noting that a plausible argument could be made that the court also made findings under R.C. 2929.14(C)(4)(b) (that at least two of the multiple offenses were committed as part of a "course of conduct" and the harm caused by the multiple offenses was so great or unusual that no single prison term would adequately reflect the seriousness of the offender's conduct). Here, the court found that the two counts of involuntary manslaughter involved two separate victims. Thus, it could be argued the trial court implicitly found appellant committed two separate crimes as part of a course of conduct. Further, the court found: "The defendant took two lives, two innocent lives. It doesn't get any worse than that. It doesn't get more serious than that." Thus, it could be argued the court essentially found that no one sentence would adequately reflect the seriousness of appellant's conduct.

{¶92} In any event, since the trial court made the required findings under R.C. 2929.14(C)(4)(c) on the record, there is no need to remand for re-sentencing. However, because the court did not incorporate these findings into its sentencing entry, as required

26

by *Bonnell, supra*, at ¶37, I would remand with instructions for the trial court to enter a nunc pro tunc entry incorporating the court's findings under R.C. 2929.14(C)(4)(c).

{¶93} For these reasons, I respectfully concur in judgment only.