174

(Nos. 7831, 7836 and 7842—Decided September 13, 1969.)

Common Pleas Court of Pickaway County.

*Mr. Roy Huffer,* prosecuting attorney, for plaintiff.
*Mr. Paul Cassidy* and *Mr. John Wolery,* for defendants.

Ammer, J.   The defendants were indicted by the April 1969 term of Grand Jury for the offense of possession of burglary tools.   Each entered a plea of not guilty and the matter has been set for trial on Monday, September 22, 1969 at 9:00 a. m.

Each of the defendants have filed a motion to suppress the use of the evidence which was seized and removed from

the possession and control of the defendants on March 3, 1969. The basis for this motion is that seizure was in violation of the defendants' rights under the Fourth and Fourteenth Amendments of the U. S. Constitution and Articles I, VI and X of the Constitution of the state of Ohio.

A hearing was held upon this motion and testimony heard by the court relative thereto. At the time of the hearing the items sought to be suppressed were brought to the court room by the deputy sheriff and the court bailiff of the Municipal Court.

The evidence in the case consisted of the testimony of the two deputies who were involved in the investigation and the subsequent arrest of the defendants.

Deputy William Dountz stated that while on patrol in the Ashville area in Pickaway County with Deputy Robert Featheringham they observed a car westbound on State Route 316 as they were proceeding east on said route and saw the car pull into a private farm lane about a hundred feet and stop. They proceeded into the lane and Deputy Dountz proceeded out of the car and approached the driver and the defendant John Lowell Blevins was asked for his identification. He asked the subject what he was looking for and was advised by Blevins that he was looking for Route 23 to get back to Columbus, Ohio. Deputy Dountz stated that he informed Blevins of the direction to Columbus and at that time noticed the subject on the right-hand side of the car get out and walk around the car. At that point he stated that he took his flashlight and threw it to reflect on the inside of the car and saw a duffel bag on the floorboard of the right front seat in which he could see the top part of two walkie-talkies. He stated that he flashed the light to the rear seat where he saw a third subject lying on the seat and another duffel bag on the floor of the rear seat. He stated at the time it appeared that the duffel bags were full. Deputy Dountz further testified that he saw an axe handle which was lying on top of one of the duffel bags in the rear seat. At that point he opened the door and pulled the duffel bags out of the car and heard a noise indicating that there were some metal ob-

jects therein. At that point he placed the subjects under arrest with the assistance of Deputy Featheringham and they were advised of their constitutional rights and then brought to the county jail and booked.

Deputy Robert Featheringham testified substantially to the same facts as Deputy Dountz except that he remained at the rear of the car while Deputy Dountz was questioning the subjects and making the search of the car.

The contents of the car revealed various items which were the alleged burglary tools set forth in the indictment.

The issue before the court is whether or not the motion to suppress is well taken. In determining this it is necessary for the court to determine whether the search made herein was reasonable under the provisions of the Fourth and Fourteenth Amendments of the U. S. Constitution.

The court would first point out that there must be a distinction made here of the initial search and the search prior to the subjects being placed under arrest and the search of the bags which was made after the subjects had been placed under arrest as different principles of law apply to the situations.

It is clear that the subjects here were not initially placed under arrest at the time they were stopped by the deputies but simply were questioned as to the reason for their being in the private farm lane. The arrest did not occur until after the items and the duffel bags had been spotted in the car and pulled out of the car.

The court will then first consider whether the search prior to the arrest was reasonable.

In that connection attention is directed to the case of *United States* v. *Rabinowitz* (1950), 339 U. S. 56, in which the court concluded that "searches which are made following the taking of a person into custody may be legal depending upon the reasonableness under all the circumstances rather than upon the practicability of procuring a search warrant." In the case of *Preston* v. *United States*, 376 U. S. 364, the court reversed a conviction on the basis "that a search of an automobile after the defendants had

been taken to the police station was too remote in time or place to have been incidental to the arrest."

The subject of searches and seizures under the Federal Constitution and the Ohio cases are reviewed exhaustively in a manual entitled "Law of Arrest, Search and Seizure in Ohio," which was prepared by Judge Earl D. Stephenson who is presently a member of the Fourth District Court of Appeals. At page 9 of that manual Judge Stephenson states the following:

"Sec. 3.1—Only Unreasonable Searches Prohibited. The U. S. Supreme Court has stated in *Harris* v. *U. S.*, 331 U. S. 145, 91 L. Ed. 1399, that it is only unreasonable searches and seizures which come within the constitutional interdict. The test of reasonableness cannot be stated in rigid or absolute terms.

"Sec. 3.2—All Searches Will Be Unreasonable Unless They Are Within Enumerated Exceptions. A search, even by search warrant may be unreasonable in the manner in which a search warrant is secured or by the manner in which it is executed. These problems will be discussed in detail under 'Search Warrants.'

"It is generally accepted that all searches without a warrant will be held unreasonable unless they fall within certain necessary exceptions which have been enumerated by the U. S. Supreme Court to be:

"A. Search incidental to a valid arrest.

"B. Search on probable cause without arrest under exceptional circumstances.

"C. Search by consent."

On page 10 of the manual, Sec. 4.1, it is stated that "probable cause is required for a search warrant, arrest warrant, arrest without warrant and search under exceptional circumstances and authorities are cited for the proposition that probable cause for search and arrest are basically the same."

In the case of *Carroll* v. *United States*, 267 U. S. 132, the court defines probable cause as follows:

"Probable cause exists where the facts and circumstances within their knowledge (officers) and of which they

had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that intoxicating liquor was being transported in the automobile which they stopped and searched.''

"In *Dumbra* v. *United States*, 268 U. S. 435, 69 L. Ed. 1032, the court stated 'probable cause has been defined by this court as reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the party is guilty of the offense with which he is charged * * *.' ''

Judge Stephenson then sets forth at page 19 through 20 what constitutes a search or seizure and examples of what is not a search or seizure.

The Supreme Court has clearly indicated that an officer may seize and use what he sees in plain sight or hears if he is lawfully where he is. See *Ker* v. *California*, 374 U. S. 23; *United States* v. *Lee*, 274 U. S. 559; and *Harris* v. *United States*, 390 U. S. 234.

In the case of *United States* v. *Lee, supra,* the court stated that the use of a search light is comparable to the use of a marine glass or field glass and is not prohibited by the Constitution.

The case of *Ker* v. *California, supra,* the officers observed marijuana on top of a kitchen sink and the court held that this was not a search and such knowledge together with information from reliable persons and other information justified arrest on probable cause and the subsequent search was valid.

The headnotes of that case, in 10 L. Ed. 2d 23, as applies herein are as follows:

"The reasonableness of a search is, in the first instance, a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the 'fundamental criteria' laid down by the Fourth Amendment and in opinions of the United States Supreme Court applying that amendment * * *.

"The discovery by a police officer entering a suspect's apartment of a brick of marijuana on a scale atop the kitchen sink does not constitute a search since the officer

merely saw what was placed before him in full view. (From separate opinion.) 10 L. Ed. 2d 731.

"Even if probable cause exists for the arrest of a person within, the Fourth Amendment's prohibition of unreasonable searches and seizures is violated by an unannounced police intrusion into a private home, with or without an arrest warrant, except (1) where the persons within already know of the officers' authority and purpose, or (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door) are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted." (From separate opinion.) 10 L. Ed. 2d 732.

The court as recently as March 5, 1968, in the case of *Harris* v. *United States, supra,* held that objects falling in plain view of a police officer who has a right to be in a position to have that view are not the product of a search and are subject to seizure and may be introduced in evidence.

The court at 390 U. S. 236, stated the following:

"Once the door had lawfully been opened, the registration card, with the name of the robbery victim on it was plainly visible. It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.

To the same effect is the case of *Poore* v. *Ohio*, 243 F. Supp. 777, in which the court held that there was no search within the Fourth Amendment described when the officer viewed a public toilet in a public building through a one way mirror from a viewpoint such as one afforded any member of the public who might have walked into the room.

Judge Stephenson, at page 69 of the manual, sets forth where a search may be made without a warrant under exceptional circumstances. It is pointed out therein that exceptional circumstances may justify a search of a mo-

bile property as distinguished from a fixed situs because the mobile property can be easily removed and would justify a probable cause more than it would in the case of a fixed situs. Attention is directed to the case of *Barone* v. *United States*, 330 F. 2d 545, in which the police heard loud screams in the night and the court stated that it was their duty to investigate in an emergency without the accompanying intent to arrest or search and that if they were denied entrance they could have entered by force and once being lawfully on the premises they could seize the counterfeit money in plain sight.

Authorities are set forth on page 71 of the manual, Sec. 10.2, for the proposition that inconvenience to officer or probable cause to search without more are not exceptional circumstances justifying a search without a warrant.

At page 72 through page 75 the authorities are set forth as to search of motor vehicles without arrest or warrant. Sections 11.1 and 11.2 of the manual read as follows:

"An automobile is a constitutionally protected property under the Fourth Amendment. However since the prohibition era the U. S. Supreme Court has allowed non-incidental searches of vehicles without a search warrant in circumstances that to deny the right would result in no search at all because of the mobility of the vehicle. The rule as it developed is not restricted to liquor violations but search may be made on the basis of any criminal offense. The Supreme Court recently recognized the rule in *United States* v. *Ventresca*, 380 U. S. 102, 13 L. Ed. 2d 684, where in a footnote the court observed in discussing exceptions to search warrants, 'The exceptions are illustrated by cases in which seizure is impossible except without warrant' *Carroll* v. *U. S.* * * * such as a search of a moving object where 'it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality of jurisdiction in which the warrant must be sought.

"The rule was first applied by the U. S. Supreme Court in *Carroll* v. *United States*, 267 U. S. 132. In that case federal prohibition agents having had some prior contact and knowledge of illegal liquor activities of de-

fendant observed the defendant in an automobile on a road near which the court judicially noticed much illegal whiskey was brought into the country. The agents stopped and searched the car finding liquor, then arrested the defendants. The court upheld the search stating that the right to search was not dependent upon the right to arrest and probable cause to believe the vehicle had unlawful contents existed. The court cited an Ohio case, *Houck* v. *State*, 106 Ohio St. 195, as being in accord.

"In *Houck* v. *State, supra,* the Ohio Supreme Court had held lawful a search of a motor vehicle without a warrant for illicit whiskey in violation of the state prohibition act where the officer even though having no previous knowledge of a violation acts in good faith and has such information as induces an honest belief that the person in charge of the vehicle was violating the law."

At page 73 of the manual, Sec. 11.3, cases are cited for the proposition that if only suspicion and not probable cause exists the vehicle cannot be searched. Sec. 11.4 of the manual at page 74 states that if a vehicle is impounded or otherwise sufficiently under police control that it could not be moved before a search warrant was obtained it cannot be searched without a warrant unless incidental to a valid arrest. The leading case cited is *Preston* v. *United States, supra.* There are two cases which are exceptions to the above rule. In the case of *Cooper* v. *California,* 386 U. S. 58, 17 L. Ed. 2d 730, the court held a search of a vehicle which had been impounded for a week where the arrest was for a narcotic violation and under the state law the vehicle was seized and to be held as evidence until a forfeiture was declared or a release ordered was held to be a reasonable search. To the same effect is the case of *Heffley* v. *Nevada* (1967), 432 P. 2d 666, in which the court held that items seized while inventorying the contents of the vehicle could be used in evidence. A very recent case on the matter of search and seizure is that decided by the U. S. Supreme Court on June 23, 1969, being that of *Chimel* v. *California,* 395 U. S. 752, 23 L. Ed. 2d 685. An exhaustive review of the cases relating to search and seizure is con-

tained in that opinion. Relative to the matters that may apply to the facts in this attention is directed to the headnotes of the case as follows:

"If probable cause for a search exists, automobiles and other vehicles may be searched without warrants where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

"Although the recurring questions of the reasonableness of searches depend upon the facts and circumstances— the total atmosphere of the case—those facts and circumstances must be viewed in the light of established Fourth Amendment principles.

"The scope of a search is unreasonable under the Fourth and Fourteenth Amendments, and a state burglary conviction based on evidence obtained through the search cannot stand where (1) police officers after arresting the accused in his home for burglary of a coin shop conducted a warrantless search of his entire three-bedroom house, including the attic, the garage, a small workshop, and various drawers, going far beyond his person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him and (2) there was no constitutional justification in the absence of a search warrant for extending the search beyond that area."

At 23 L. Ed. 694, of that opinion, the court stated as follows:

"The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest."

At 23 L. Ed. 700, Mr. Justice Harlan, in a concurring opinion, stated the following:

"Applying this reasonableness test to the area of searches incident to arrests, one thing is clear at the outset. Search of an arrested man and of the items within his immediate reach must in almost every case be reasonable. There is always a danger that the suspect will try to escape, seizing concealed weapons with which to overpower and injure the arresting officers, and there is a danger that he may destroy evidence vital to the prosecution. Circumstances in which these justifications would not apply are sufficiently rare that inquiry is not made into searches of this scope, which have been considered reasonable throughout.

"The justifications which make such a search reasonable obviously do not apply to the search of areas to which the accused does not have ready physical access. 'This is not enough, however, to prove such searches unconstitutional. The court has always held, and does not today deny, that when there is probable cause to search and it is 'impracticable' for one reason or another to get a search warrant, then a warrantless search may be reasonable. * * * This is the case whether an arrest was made at the time of the search or not."

Another recent case which has application to the area of search and seizure, but more commonly known as a stop and frisk case, is that of *Terry* v. *Ohio* (1968), 392 U. S. 1. The court in that case distinguished between stop, arrest and seizure, at 392 U. S. 17:

"The danger in the logic which proceeds upon distinctions between a 'stop' and an 'arrest,' or 'seizure' of the person, and between a 'frisk' and a 'search' is twofold. It seeks to isolate from constitutional scrutiny the initial stages of the contact between the policeman and the citizen. And by suggesting a rigid all-or-nothing model of justification and regulation under the Amendment, it obscures the utility of limiations upon the scope, as well as the initiation, of police action as a means of constitutional regulation. This court has held in the past that a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and

scope. * * * The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible. *Warden* v. *Hayden,* 387 U. S. 294, 310 (Mr. Justice Fortas concurring).

"The distinctions of classical 'stop-and-frisk' theory thus serve to divert attention from the central inquiry under the Fourth Amendment—The reasonableness in all the circumstances of the particular governmental invasion of citizen's personal security. 'Search' and 'seizure' are not talismans. We therefore reject the notions that the Fourth Amendment does not come into play at all as a limitation upon police conduct if the officers stop short of something called a 'technical arrest' or a 'full-blown search.'
*" * * *

"If this case involved police conduct subject to the Warrant Clause of the Fourth Amendment, we would have to ascertain whether 'probable cause' existed to justify the search and seizure which took place. However, that is not the case. We do not retreat from our holdings that the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure, * * * or that in most instances failure to comply with the warrant requirement can only be excused by exigent circumstances. * * * But we deal here with an entire rubric of police conduct—necessarily swift action predicated upon on-the-spot observations of the officer on the beat —which historically has not been, and as a practical matter could not be, subjected to the warrant procedure. Instead, the conduct involved in this case must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures."

Chief Justice Warren in that opinion stated that the test would be if the facts available to the officer at the moment of the search and seizure would warrant a man of reasonable caution in the belief that the action taken was appropriate. The court in that case sets a new test whether his action is reasonable as contrasted with the test of probable cause which applies to search and arrest. It is stated in the opinion that the test of reasonableness in the

stop and frisk cases would be justified on the basis of protection of the police officers and would be confined to the scope of discovery of guns, knives, clubs or other hidden instruments which could be used for assault of police officers. In that case Justice Douglas dissented in which he seeks to apply the test of probable cause to the cases of stop and frisk rather than the lesser test of whether it is reasonable.

The court after reviewing all of the above cases and the facts contained in this case as presented at the time of the hearing on the motion to suppress would first note that the officers were lawfully at the place where the incident occurred considering the fact that the subjects drove into this private farm lane at 1:00 a. m. and it appeared to be a foreign car. In addition to that the court notes that Deputy Dountz testified that they had received a communication as to at least one of the subjects several days previously to be on the alert for the presence of such subject in any area. In addition to that it is to be noted that when Deputy Dountz was questioning the driver who stepped out of the car that the other subject stepped out from the front seat of the car and started walking around the car. It is then to be noted that Deputy Dountz flashed his flashlight in the car at which time he noticed the duffel bags and the axe handle and in the duffel bags he could see two walkie-talkies. It might first be noted that walkie-talkies in and of themselves are not burglary tools but their presence in the duffel bag certainly would be justification for the officer to make further investigation as to the presence of such devices. In view of the decisions of the U. S. Supreme Court holding that an officer may seize and use what he sees in plain sight if he is lawfully where he is the court is of the opinion that the deputy flashing his light into the car when he noticed the duffel bag would not constitute a search at that point but that this gave the deputies probable cause for their making a search under exceptional circumstances without a warrant since there were three subjects in the automobile which is mobile and which could be easily moved before a search warrant could be obtained.

The officers then having probable cause from noticing the duffel bags with the other items extending from the duffel bags and the axe handle and having information relative to one of the subjects by sheriff's radio and this occurring at 1:00 a. m. in a private farm lane it is the opinion of this court that the circumstances were reasonable for the officers to proceed with their search and that they had probable cause to proceed with their search after they had seen the duffel bags in the car by flashing the flashlight therein. Having probable cause the officers then could proceed to make a search as they did by pulling the duffel bags out of the car. It was at that point that they placed the men under arrest.

There was no question raised as to the validity of the arrest so the court will assume that the arrests made under these circumstances were valid in view of the circumstances which preceded the arrest including the hearing of metal in the bags as they pulled the bags out of the car.

Having concluded that the arrest was lawful the subsequent search of the duffel bags was incidental to a lawful arrest. Propositions in this regard are clearly set forth in Sec. 9.1 of the manual on search and seizure by Judge Stephenson at pages 58 through 69. The court therefore holds that the subsequent search of the duffel bags was incidental to a lawful arrest and was therefore reasonable.

The court having reviewed the facts herein and the law which applies to these facts is therefore of the opinion that the search made prior to the arrest and the search made incidental to the arrest were reasonable and made with probable cause and therefore the evidence obtained may be available for introduction at the time of trial.

In conclusion the court is of the opinion that the motion to suppress the evidence is not well taken and the same will be overruled.

The Prosecuting Attorney will prepare a journal entry in accordance herewith.