[Cite as *State v. Washington*, 2023-Ohio-4484.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2023-L-029 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| MARTIN L. WASHINGTON, | |
| Defendant-Appellant. | Trial Court No. 2022 CR 001018 |

## O P I N I O N

Decided:  December 11, 2023
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Brian A. Smith*, Brian A. Smith Law Firm, LLC, 123 South Miller Road, Suite 250, Fairlawn, OH 44333 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1}   Defendant-appellant, Martin L. Washington ("Appellant"), appeals from his conviction for Obstructing Official Business and Having Weapons Under Disability from the Lake County Court of Common Pleas.  For the following reasons, we affirm.

{¶2}   On October 28, 2022, the Lake County Grand Jury issued a five-count indictment charging appellant with, Obstructing Official Business, a second degree misdemeanor, in violation of R.C. 2921.31 (Count 1); two counts of Having Weapons Under Disability, third degree felonies, in violation of R.C. 2923.13(A)(1) with firearm

specifications pursuant to R.C. 2941.141 (Counts 2 and 4); and two counts of Having Weapons Under Disability, third degree felonies, in violation of R.C. 2923.13(A)(2) with firearm specifications pursuant to R.C. 2941.141 (Counts 3 and 5).[1]

{¶3} On November 2, 2022, appellant executed a written waiver, waiving his right to be present at arraignment, and entered a not guilty plea. Bond was set at $100,000.00 cash or surety or 10% with the condition of no firearms in accordance with the waiver.

{¶4} Appellant, through trial counsel, filed his motion to suppress the firearms discovered when law enforcement executed the warrant for appellant's arrest. A hearing was held on December 20, 2022. The trial court denied appellant's motion and concluded that "the firearms were subject to seizure under the plain view exception to the search warrant requirement."

{¶5} The case proceeded to a jury trial on January 9, 2023, and concluded the following day. The parties entered three stipulations. The first stipulation was that appellant had been previously convicted of a felony offense of violence which prohibited him from acquiring, having, carrying, or using a firearm, and that the two firearms discovered were both operable. In addition to these stipulations, the following facts were presented at trial:

{¶6} On March 14, 2022, parole officer Kayla Ward ("Officer Ward") was assigned as appellant's parole officer. Officer Ward met with appellant at a half-way house the following day to discuss the terms of his parole, including that he would be fitted for an electronic GPS monitor the following day. Officer Ward returned to the

---

1. This matter was bound over from the Willoughby Municipal Court, Case No. 2022 CRA 2004, on September 15, 2022.

halfway house on March 16, 2022 to remind appellant of his appointment. Appellant could not be located.

{¶7} Officer Ward was able to make brief contact with the appellant over the phone. Appellant advised her that he would not be returning to the halfway house and that he would not be going to his appointment to receive his GPS monitor. He promptly ended the call. Officer Ward issued a "whereabouts unknown" and requested that a warrant be issued from the adult parole authority.

{¶8} Wickliffe police officer Nathaniel Heaton ("Officer Heaton") testified that he was working the day shift as a patrol officer on May 4, 2021. Officer Heaton was provided information from night shift officers regarding a vehicle parked at the Quality Inn/Econo Lodge ("Quality Inn") on Euclid Avenue, Wickliffe, Lake County, Ohio. The car had been driven to the parking lot by Michelle McCarroll ("McCarroll"), a known associate of the appellant. After confirming the warrants through LEADS, Officer Heaton went to the Quality Inn to see if the appellant was there. Officer Heaton observed McCarroll approach the vehicle, which had slashed tires. He spoke with her regarding the vehicle's condition. McCarroll informed Officer Heaton that she was going to have the vehicle towed. Officer Heaton continued to watch the vehicle and the parking lot for signs of appellant.

{¶9} Eventually, Officer Heaton observed McCarroll exit the Quality Inn followed by appellant. Appellant saw the police cruiser and returned inside the hotel. Officer Heaton exited his cruiser and entered the Quality Inn. He discovered appellant running and a foot chase ensued. Officer Heaton testified that he ordered appellant to stop, and appellant did not comply. Appellant successfully eluded Officer Heaton.

3

{¶10} Officer Heaton testified that he continued to search the hotel until back up officers arrived. Officers were able to confirm that appellant had entered into room 271. The hotel clerk provided a master key for the door to room 271. Officers attempted to open room 271 but were unable to do so. Contact with appellant during this time was also unsuccessful. For safety reasons, officers ended their efforts and Officer Heaton obtained a warrant for Obstructing Official Business.

{¶11} Parole officer Aaron Wery ("Officer Wery") serves as a liaison between the parole authority and the U.S. Marshals Task Force. Officer Wery received a referral for the apprehension of appellant in August of 2022. Officer Wery discovered the appellant was living in an apartment with his girlfriend, McCarroll, located at 1205 Lost Nation, Apartment 105, in the city of Willoughby, Lake County, Ohio. On September 5, 2022, Officer Wery received information that the appellant was believed to be at the apartment.

{¶12} The following day, on September 6, 2022, Officer Wery, Deputy U.S. Marshal, Christopher Snack ("Deputy Marshal Snack"), along with several other members of the task force, arrived at the Lost Nation apartment complex to execute the warrants. Task force members knocked and announced and received no answer. After the third announcement, officers attempted to breach the door. The door did not open because it was barricaded with a couch.

{¶13} Prior to a second attempt at breaching the apartment, McCarroll told officers she would open the door from inside. McCarroll was removed from the apartment and was interviewed by Officer Wery. Task force officers simultaneously deployed a reconnaissance robot to scan the interior apartment. No other occupants were visible on the camera. Deputy Marshal Snack testified that he and other members of his team then

4

cleared the apartment room by room. The first sweep of the apartment did not yield any results. A secondary sweep was then conducted.

{¶14} During the secondary sweep, task force members located a removable wall panel inside the closet of the bedroom. Screws were missing from the panel. Items were stacked in front of the panel. Deputy Marshal Snack testified that it appeared to be an area that someone could conceal themselves inside.

{¶15} Officers began to remove the boxes and appellant confirmed he was hiding inside. Appellant was instructed to exit. Officers removed the panel, and appellant was discovered hiding under the furnace unit. Appellant was removed from the space and two firearms were leaning against the back wall of the space. The firearms, a Luger pistol and a Smith & Wesson revolver, were initially photographed by Officer Wery. The firearms were not disturbed by task force members. The firearms were subsequently photographed, cleared, and collected by Willoughby Police Detective Charles Krejsa ("Detective Krejsa"). The firearms were packaged for forensic testing by Detective Krejsa and Detective Sleigh of the Willoughby Police Department.

{¶16} Appellant was arrested and placed in the back of a task force vehicle. Officer Wery testified that he read appellant his Miranda rights and proceeded to question him about the status of his warrants and the weapons. According to Officer Wery, appellant had knowledge of the warrants and also stated he got the firearms "off the streets."

{¶17} Lake County Forensic Analyst, Rebecca Silverstein-Groce ("Silverstein-Groce") specializes in fingerprints, firearms, and toolmarks. Silverstein-Groce testified that as part of her job duties, she performs operability tests. During her testimony she

5

defined operability, over defense objection, as the capability "of expelling a projectile during the course of combustion." She further discussed the procedure for collecting fingerprints and analyzing toolmarks. Silverstein-Groce received both firearms collected in the instant case. She swabbed several areas of the firearms to submit for DNA comparison prior to performing superglue fuming to analyze the weapons for any fingerprints. Silverstein-Groce did not collect any useable prints from the firearms, the magazines for the pistol, or ammunition.

{¶18} On October 4, 2022, Detective Kresja also collected a DNA standard from appellant to compare with DNA collected from the firearms. Dr. Karen Zavarella ("Dr. Zavarella"), DNA supervisor at the Lake County crime laboratory, compared the DNA standard obtained from appellant with the swabs taken from the firearms and magazine. Dr. Zavarella could not exclude appellant as a contributor to the profile collected from the revolver and concluded that "a likelihood ratio in a very statistical analysis and the DNA mixture profile is 64.9 million times more likely to occur if the mixture consists of DNA from [appellant] and two other unidentified contributors." As to the Luger pistol, Dr. Zavarella testified that it was "not possible to determine whether or not [appellant] is included as a contributor to the mixture of the DNA profile" found on the pistol.

{¶19} On January 10, 2023, the jury found appellant guilty of all charges as contained in the indictment. The trial court revoked appellant's bond and ordered a presentence investigation.

{¶20} A sentencing hearing was held on February 15, 2023. The State and defense counsel agreed that Counts 3, 4, and 5 would merge for purposes of sentencing. The State elected to proceed to sentencing on Count 2. The parties further agreed that

6

the firearm specifications also merged for purposes of sentencing. The trial court sentenced appellant to 90 days on Count 1, and 36 months on Count 2 to be served concurrently. The trial court also imposed a one-year sentence on the firearm specification to be served prior to and consecutively to the sentence imposed on Count 2. Appellant now appeals.

{¶21} Appellant raises the following assignments of error:

{¶22} "[1]. Appellant's convictions were against the manifest weight of the evidence."

{¶23} "[2]. The trial court erred in denying Appellant's Motion to Suppress, in violation of Appellant's right against unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution."

{¶24} "[3]. The trial court erred in admitting testimony from the State's witness, Rebecca Silverstein-Groce, as to the definition of 'operable' with respect to the firearms, where the State and Appellant had previously stipulated that the firearms were operable, and where the witness's testimony prejudiced Appellant."

**Manifest Weight**

{¶25} In appellant's first assignment of error, he alleges that his convictions were against the manifest weight of the evidence. We disagree.

{¶26} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence

7

and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶27} "The [trier of fact] is the sole judge of the weight of the evidence and the credibility of the witnesses." *State v. Landingham*, 11th Dist. Lake No. 2020-L-103, 2021-Ohio-4258, ¶ 22, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986), citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273; *Henkle v. Salem Mfg. Co.* (1883), 39 Ohio St. 547. In other words, this court gives deference to the weight and factual findings made by the factfinder. *State v. Brown*, 11th Dist. Trumbull No. 2002-T-0077, 2003-Ohio-7183, ¶ 52, citing *Thompkins* at 390, and *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph two of the syllabus.

{¶28} In the instant case, the jury found appellant guilty of one count of Obstructing Official Business, a second degree misdemeanor, in violation of R.C. 2921.31 (Count 1); two counts of Having Weapons Under Disability, third degree felonies, in violation of R.C. 2923.13(A)(1) with firearm specifications pursuant to R.C. 2941.141 (Counts 2 and 4); and, two counts of Having Weapons Under Disability, third degree

8

felonies, in violation of R.C. 2923.13(A)(2) with firearm specifications pursuant to R.C. 2941.141 (Counts 3 and 5).

{¶29} R.C. 2921.31(A), Obstructing Official Business, provides: "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶30} Appellant's conviction for Obstructing Official Business was not against the manifest weight of the evidence. Officer Heaton testified that he was parked outside the Quality Inn. He observed the appellant exiting the building. When appellant saw Officer Heaton, he immediately reversed course and reentered the building. Officer Heaton followed the appellant inside. The appellant was running through the building and ignored directives from Officer Heaton to stop. Appellant then was able to enter room 271 and deadbolted the door. He later fled through the window of the room and hid in the nearby bushes.

{¶31} In *State v. Acker*, 5th Dist. Holmes No. 22CA008, 2023-Ohio-2085, ¶ 47, the Fifth Appellate District recognized:

> It is well-established that running from deputies '[does] hinder the officers' performance of their lawful duty * * *.' *State v. Friedman*, 5th Dist. Stark No. 2013CA00150, 2013-Ohio-4669, ¶ 22; citing [*State v.*] *Dice*, 3rd Dist. Marion No. 9-04-41, 2005-Ohio-2505, ¶ 23; *State v. Davis*, 140 Ohio App.3d 751, 753, 749 N.E.2d 322 (1st Dist.2000) [appellant realized officers sought to detain him and he continued to walk away]; *State v. Harris*, 10th Dist. No. 05AP-27, 2005-Ohio-4553, at ¶ 16. ('[W]e hold that fleeing from a police officer who is lawfully attempting to detain the suspect under the authority of Terry, is an affirmative act that hinders or impedes the officer in the

9

performance of the officer's duties as a public official and is a violation of R.C. 2921.31, obstructing official business.').

{¶32} In *Acker*, the defendant fled from police when the police were investigating a warrant. The defendant fled, ignored orders from police, and ultimately escaped immediate capture. The court found "there is no question the deputies were acting in performance of a lawful duty in their encounter with appellant, including investigating the warrant, and appellant's act of fleeing the scene hampered them in performing that duty." *Id.* at ¶ 41.

{¶33} In the instant case, a reasonable jury could have found that appellant, without privilege, purposefully tried to hinder, obstruct, or delay the police from investigating when he saw Officer Heaton in the parking lot, reversed course, and fled through the Quality Inn despite orders to stop. Further, appellant locked himself inside a room before slipping out the window and concealing himself in the bushes.

{¶34} Appellant next argues that his convictions of Having Weapons Under Disability were against the manifest weight of the evidence. Counts 3, 4, and 5 merged for purposes of sentencing with Count 2. As the appellee points out, no sentence was imposed on the merged counts, therefore "there is no conviction on those charges." *State v. Whetstone*, 11th Dist. Lake No. 2015-L-114, 2016 WL 5637253, *5. Therefore, any error regarding the charges that merged is irrelevant. *Id.,* citing *In re J.C.*, 11th Dist. Lake No. 2012-L-083, 2013-Ohio-1292, ¶ 22. As appellant was convicted of Count 2, we will limit our analysis to that charge.

{¶35} R.C. 2923.31(A)(1) provides: "[u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use

10

any firearm or dangerous ordnance, if any of the following apply: (1) The person is a fugitive from justice."

{¶36} Appellant argues that "the weight of the evidence failed to demonstrate that Washington knowingly possessed the firearms." He asserts that the limited size of the area prohibited him from exercising dominion or control of the object.

{¶37} "In order to 'have' a weapon, one must either actually or constructively possess it. *** 'Constructive possession exists when an individual exercises dominion and control over an object, even though the object may not be within his immediate physical possession.' *State v. Wolery* (1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351." *State v. Burgess*, 11th Dist. Lake No. 2002-L-019, 2004-Ohio-3338, ¶ 40.

{¶38} In the instant case, it is undisputed that appellant was a fugitive from justice and that he had a prior conviction which prohibited him from possession of a firearm. Appellant, knowing that law enforcement officers were at the apartment to execute the warrant for his arrest, hid behind a false wall with the furnace unit to evade capture. In that small area, appellant and two firearms were discovered. Because that area is small, a reasonable inference can be drawn that appellant was both aware of the firearms and that the firearms were within his reach when he was arrested. In addition, appellant could not be excluded from the DNA mixtures obtained from those firearms. Dr. Zavarella testified that the sample obtained from the revolver was 64.9 million times more likely to occur if appellant was a contributor to the sample. Moreover, once arrested and having waived his Miranda rights, appellant admitted to Officer Wery that the firearms were from "the streets."

11

Case No. 2023-L-029

{¶39} Reviewing the weight of the evidence, we cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Appellant's convictions are consistent with the manifest weight of evidence.

{¶40} Thus, appellant's first assignment of error is without merit.

**Suppression**

{¶41} In appellant's second assignment of error, appellant asserts that the trial court erred when it denied his motion to suppress. Appellant alleges that the trial court incorrectly concluded that the firearms were admissible pursuant to the plain view exception. We disagree.

{¶42} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "[T]he trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* We must accept the trial court's findings of fact if they are supported by competent, credible evidence, and then independently decide whether those facts satisfy the applicable legal standards without deference to the trial court's decision. *Id.*

{¶43} "'[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 17, quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnote omitted). "When a defendant moves to suppress evidence recovered during a warrantless search, the

12

state has the burden of showing that the search fits within one of the defined exceptions to the Fourth Amendment's warrant requirement." *Banks-Harvey* at ¶ 18, citing *Athens v. Wolf*, 38 Ohio St.2d 237, 241, 313 N.E.2d 405 (1974).

{¶44} The plain view doctrine is one such exception. "Under the Fourth Amendment's plain-view doctrine, an officer may seize an object in plain view without a warrant if (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be viewed, (2) the object's incriminating nature is immediately apparent, and (3) the officer has a right to access the object where it is located." *State v. Burroughs*, 169 Ohio St.3d 79, 2022-Ohio-2146, 202 N.E.3d 611, ¶ 15.

{¶45} It is undisputed that law enforcement personnel were at the apartment to execute a warrant for appellant's arrest. Officer Wery testified at the suppression hearing that he located appellant living with his girlfriend at the Lost Nation apartment. Officers believed the appellant was at the apartment when they went to arrest him. "[W]here law enforcement has reason to believe the subject of the arrest warrant lives in the residence and is in fact there at the time the warrant is executed, the arrest warrant is sufficient authorization to enter." (Citations omitted). *State v. Hughes*, 11th Dist. Ashtabula No. 2018-A-0035, 2018-Ohio-5069, ¶ 15.

{¶46} Officers knocked and announced but received no answer from the occupants. Attempts at entering the apartment with the assistance of a battering ram were also unsuccessful. Eventually, the appellant's girlfriend let officers into the apartment after removing a couch that was blocking the front door. Officers swept the apartment for appellant. Initially, the search was unsuccessful. After a second sweep of the apartment, officers discovered a false wall in the bedroom closet. Officer Wery

Case No. 2023-L-029

testified that the screws that held the panel in place were missing, and that laundry baskets and clothing bags were stacked in front of the area. Officers discovered the appellant hiding behind the false wall under the furnace.

{¶47} As officers were helping the appellant out of his hiding place, two firearms were observed in the void previously occupied by appellant. The incriminating nature of the firearms was immediately apparent to officers who had knowledge of appellant's prior convictions which prohibited him from having firearms. Finally, officers had a right to access the objects where they were located. The firearms were inside the void with appellant when he was discovered during the execution of an arrest warrant.

{¶48} Appellant asserts that the plain view doctrine is inapplicable because appellant's body blocked the view of the firearms, and the area where officers discovered appellant was poorly lit requiring the use of a flashlight to illuminate the area where the firearms were discovered. We disagree.

{¶49} A number of appellate courts have held that the use of the flashlight does not negate the plain view exception, including this court. *State v. Mason-Gaul*, 11th Dist. Ashtabula No. 2003-A-0109, 2005-Ohio-1561, ¶ 13; *State v. Mowbray*, 72 Ohio App.3d 243, 247, 594 N.E.2d 626, 628 (4th Dist.1991); *State v. Travick*, 8th Dist. Cuyahoga No. 111662, 2023-Ohio-460, ¶ 20; *State v. Parsons*, 3rd Dist. No. 7-16-08, 2017-Ohio-1315, 88 N.E.3d 624, ¶ 30.

{¶50} In *State v. Mason-Gaul*, this Court concluded that "the use of a flashlight to aid in viewing the interior of an automobile does not negate the inadvertency of the discovery of the illegal item." The panel noted that "the inadvertency prong prohibits the use of the 'plain view' doctrine as a pretext for a search for a specific item. Officer Haines

14

used a flashlight because it was dark. There was no evidence that he was looking for an open container when he approached the vehicle." *Mason-Gaul* at ¶ 13.

{¶51} In *State v. Byrd*, 8th Dist. Cuyahoga No. 35598, 1977 WL 201221, officers used a flashlight to peer into the interior of a parked car when they discovered an illegal weapon in plain view on the floor of the car. The Eighth Appellate District noted that "[t]he use of a search light or a flashlight to seize an object in 'plain view' is not an unreasonable search and seizure." *Byrd* at *3-4, citing *United States v. Lee* (1927), 274 U.S. 559; *State v. Blevins* (1969), 22 Ohio Misc. 174.

{¶52} In *Lee*, the Supreme Court of the United States found the use of a search light permissible. Specifically, the Court noted:

> The testimony of the boatswain shows that he used a searchlight. It is not shown that there was any exploration below decks or under hatches. For aught that appears, the cases of liquor were on deck and, like the defendants, were discovered before the motorboat was boarded. Such use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the Constitution.

*Lee*, 274 U.S. 559, 563.

{¶53} Similarly, in *United States v. Dunn*, 480 U.S. 294, 305 107 S.Ct. 1134, (1987), the Supreme Court concluded that "the officers' use of the beam of a flashlight, directed through the essentially open front of respondent's barn, did not transform their observations into an unreasonable search within the meaning of the Fourth Amendment."

{¶54} The prohibition against illegal searches and seizures does not require that law enforcement officers rely solely on natural lighting. In other words, officers' use of a flashlight does not negate the application of the plain view exception outright.

15

Case No. 2023-L-029

{¶55} In the case sub judice, officers were searching the apartment for appellant to effectuate his arrest pursuant to the warrant. Officers were initially unable to breach the door of the apartment which was barricaded from inside. Once inside, officers identified appellant's live-in girlfriend, who denied appellant was inside the apartment. Officers searched the apartment for appellant. They were not searching for firearms or other evidence of a crime.

{¶56} Appellant concedes in his briefing that the "lighting inside the room was low, and overall visibility poor." Officers utilized flashlights to illuminate the room to aid in their search for appellant. Appellant was ultimately discovered behind a false wall, hiding under a furnace in a small void. As appellant points out, this area did not have "the same level of lighting." This area was virtually untouched by any natural light.

{¶57} As soon as appellant was removed from the opening, the space, previously occupied by appellant, was illuminated by the flashlights. Officer Wery testified that there was a possibility that other people may have also been concealed in the area since officers did not know how big the space was until appellant was removed. When the area was observed, the firearms were readily discernible in the space. Officers did not need to move any items in the space to search the area. The firearms were visible from the officers' vantage point outside of the void. Thus, the plain view doctrine is applicable.

{¶58} While not addressed by the trial court in its denial of appellant's motion to suppress, we further conclude that the firearms were discovered during a lawful protective sweep. "In order for officers to undertake a protective sweep of an area, 'they must articulate facts that would warrant a reasonably prudent officer to believe that the area to be swept harbored an individual posing a danger to those on the scene.'" *State*

16

*v. David*, 11th Dist. Ashtabula No. 2016-A-0029, 2017-Ohio-1102, ¶ 31, citing *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 188, quoting *United States v. Biggs*, 70 F.3d 913, 915 (6th Cir.1995).

{¶59} When Officers arrived at the apartment to execute the arrest warrant, the front door of the apartment was barricaded from the inside. Officers did not receive an initial response from the occupants. After an unsuccessful attempt to force the front door open, McCarroll removed the barricade and opened the front door for officers. Officers swept the apartment in search of appellant. During a second search of the apartment, officers discovered the removable wall in the closet. Appellant announced his presence from behind the removable wall. Officers could not know what or who was behind the false wall. Officers were entitled to search the area upon removal of the wall to determine if any other person may be harbored within the void with appellant. The fact that the void was not large enough to harbor another is inconsequential as that determination could not have been made until the area was inspected. During that brief protective inspection, firearms were readily apparent in the space.

{¶60} Further, "an officer who makes a lawful arrest may conduct a warrantless search of the arrestee's person and of the area 'within his immediate control.' *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 182. "The search-incident-to-arrest exception has two rationales: protecting arresting officers and safeguarding evidence that the arrestee might conceal or destroy." *Id.*, citing *Arizona v. Gant*, 556 U.S. 332, 339, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). Importantly, "the right to search incident to arrest exists even if the item is no longer accessible to the arrestee at the time

17

of the search * * * As long as the arrestee has the item within his immediate control near the time of the arrest, the item can be searched." *Id.* at ¶ 183, citing *United States v. Romero*, 452 F.3d 610, 619 (6th Cir.2006) and *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir.2001).

{¶61} Appellant was inside the void behind the false wall when officers executed the arrest warrant. Appellant had immediate control over the space and area behind the wall. As such, the firearms were discovered in a search incident to arrest.

{¶62} Therefore, the trial court did not err when it denied appellant's motion to suppress the firearms and determined that the firearms were in plain view. The firearms were further discovered during a protective sweep and during a search incident to appellant's arrest. Thus, appellant's second assignment of error is without merit.

## "Operability" Testimony

{¶63} In his third assignment of error, appellant asserts that the trial court erred when it allowed the State's witness, Rebecca Silverstein-Groce, to testify regarding the definition of "operable." The parties had jointly stipulated prior to trial that the two firearms were operable. Appellant contends he was prejudiced by the trial court's ruling. We disagree.

{¶64} A trial court's ruling as to the admission or exclusion of expert testimony is within its broad discretion and will not be disturbed absent an abuse of discretion. *State v. Tomlin*, 63 Ohio St.3d 724, 728 (1992). Further, "the admission of the particular testimony to which defense counsel did object, by raising the issue of relevancy, is reviewed for an abuse of discretion. In this instance, a 'trial court has broad discretion in the admission and exclusion of evidence[.]'" *State v. Brown*, 11th Dist. No. 2016-A-

18

0021, 2017-Ohio-9259, 103 N.E.3d 32, ¶ 46, quoting *State v. Bickerstaff*, 11th Dist. Ashtabula No. 2014-A-0054, 2015-Ohio-4014, 2015 WL 5728518, ¶ 31; *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

{¶65} "'The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record.' *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-208[9], ¶ 30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678, [148 N.E. 362] (1925)." *State v. Ortiz*, 11th Dist. Lake No. 2022-L-061, 2023-Ohio-2114, ¶ 48, citing *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707, ¶ 9. In other words, "an abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *Raia*, *supra*, citing *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting Black's Law Dictionary (8 Ed.Rev.2004).

{¶66} "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] * * * By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Raia*, *supra,* citing *Beechler* at ¶ 67.

{¶67} Appellant alleges that he was prejudiced by Silverstein-Groce's testimony "by forcing jurors to revisit the fact that there were two 'operable' firearms near Washington's location at the time officers entered the room to arrest him." We disagree.

{¶68} The State was required to prove beyond a reasonable doubt each element of the charges as contained in the indictment, including that the firearms discovered with appellant were operable.

19

Case No. 2023-L-029

{¶69} The parties stipulated prior to trial that the firearms in this case were operable. From the record, it does not appear that appellant or his counsel sought to limit the scope of Silverstein-Groce's testimony in any fashion. Prior to Silverstein-Groce's testimony, the stipulations were read to the jury that both firearms were operable.

{¶70} Importantly, Silverstein-Groce did not testify as to the operability of the firearms discovered. Instead, she provided her qualifications and explained the procedures employed by her in this case to arrive at the results in her reports. She then offered the definition of operability which did not differ in any significant manner from the definition provided by the trial court in its instructions. The trial court provided the following to the jury: "[f]irearm means any deadly weapon capable of expelling or propelling one of more projectiles by the action of explosive or combustible propellant."

{¶71} The State merely offered a definition of a required element through testimony of a witness which mirrored the definition provided by the trial court in its jury instructions. The appellant has failed to indicate how he was prejudiced by such limited testimony. Given the State's burden to prove each element of the charge, we cannot conclude the trial court abused its discretion in allowing the witness to testify as to the definition of operability.

{¶72} Thus, appellant's third assignment of error is without merit.

20

{¶73} For the reasons set forth herein, none of appellant's assignments of error have merit.  The judgment of the Lake County Court of Common Pleas is affirmed.


MARY JANE TRAPP, J.,

EUGENE A. LUCCI, J.,

concur.

21